UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION



UNITED STATES OF AMERICA,

    Plaintiff,

v.                         Case No. 8:25-cv-01728-JLB-NHA

PEYMON MOTTAHEDEH and

APRIL L. MOTTAHEDEH,

    Defendants.

---

## DEFENDANTS' OBJECTION TO MAGISTRATE'S DENIAL OF

## DEFENDANTS MOTION TO STRIKE

To The Honorable District Court Judge, John Badalamenti:

Defendants Peymon Mottahedeh and April L. Mottahedeh ("DEFENDANTS"), proceeding pro se, object to Magistrate Natalie Hirt Adams' Order of March 17, 2026, denying DEFENDANTS' Motion to Strike of March 12, 2026, as follows:

IMPORTANT NOTE:

Fundamental rules of justice require that whenever one-party requests or motions the court to do anything, the other party is given the

1

opportunity to respond in agreement or opposition to what the first party motioned or requested the court to do. When the court makes a ruling, without giving the 2nd party the opportunity or responsibility to respond to the Request or Motion and then rules against the 1st party that made the request or motion; It gives the appearance of bias against the 1st party and that is not fitting of this honorable court.

In this case, the 2nd party is the U.S. Government. The magistrate is also an employee of the U.S. Government. It is a well-known fact that judges often have pro-government bias. One of the fundamental differences between America and other countries around the world is that America has an independent Judiciary. Even though the judiciary is paid for by the U.S. Government, the Judiciary still maintains its independence from the U.S. Government.

## I. GENERAL OBJECTIONS

**1.** The Magistrate's Order states, "based on Plaintiff's representations that Defendants appear to wish to evade service." Less than one week after the DEFENDANTS' Motion to Strike was filed, the Magistrate denied DEFENDANTS' Motion to Strike without requiring the Plaintiff to respond and concluded that "Granting the motion to strike would further delay this litigation". The Magistrate claimed that the service of this case was delayed due to the improper actions of the

2

Defendant. However, her claim is based upon "representations of the [Plaintiff]" in a hearing where the Defendant was not present, because the Defendant had not yet been served.

Plaintiff is conducting this case on behalf of the IRS. The Plaintiff's characterization that Defendants sought to "evade service"' is unsupported by the facts of the Plaintiff's own prior interactions with the Defendants. In 2024, several Internal Revenue Service (IRS) agents visited Defendant Peymon Mottahedeh at his established place of business, Freedom Law School. As a result of this visit, the IRS had actual and contemporary knowledge of a location where Mr. Mottahedeh maintains a consistent presence during standard business hours. Despite this knowledge, the Plaintiff's process servers made no attempt to effectuate service at this known business address. Any delay in service was a result of the Plaintiff's failure to utilize a known, reliable business address, rather than any effort by the Defendants to avoid the jurisdiction of this Court.

The Magistrate should not have made an order with only one side of the story.

**2.** The Plaintiff's mudslinging Complaint of July 3, 2025, can be compared to Hillary Clinton's slanderous campaign statements in September 2016 when she called Trump supporters "a basket of

3

deplorables: Racist, Sexist, Homophobic, Xenophobic, Islamophobic." These slanderous labels, although tolerated in the political arena and are protected by the First Amendment, they have no place in legal forums. That is why the Fed. Rules of Civ. Proc. Rule 12(f) was written to exclude slanderous, impertinent, and immaterial allegations from the Complaint.

"A motion to strike ... will usually be denied **unless** the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Thompson v. Kindred Nursing Centers E., LLC*, 211 F.Suppl. 2d 1345, 1348 (M.D. Fla. 2002) quoting *Augustus v. Board of Public Instruction of Escambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962). Emphasis added. The slanderous, impertinent, and immaterial allegations **do** "have no possible relation to the controversy" in this matter and most certainly **would** "cause prejudice to" DEFENDANTS.

The Magistrate's Order of denial of Defendant's Motion to Strike was clearly erroneous in stating that DEFENDANTS' Motion to Strike "would not serve the purposes of Rule 12(f) 'to clean up the pleadings [and] streamline litigation.'" The opposite is the case here. Cleaning up the pleadings and streamlining the litigation **would** promote a more streamlined litigation by removing the slanderous, immaterial, and impertinent thirteen paragraphs and one phrase shown below.

4

Magistrate's ORDER denied DEFENDANTS' Motion to Strike because, as described in 26 USC, Section 6651(a) the full penalty will be imposed "unless the taxpayer's failure 'is due to reasonable cause and not due to willful neglect.'" "[T]he history of prior related tax actions, Defendants alleged familiarity with tax law, and Defendants' alleged ideological opposition to paying federal income tax – is likely relevant to 'reasonable cause' and 'willful neglect' inquiries inherent to the evaluation of additional, unassessed penalties."

In the attached declaration, DEFENDANTS have **admitted** that the non-assessed failure-to-pay penalties and interest which are based on the alleged assessments, have deliberately not been paid and any of the alleged failure-to-pay penalties and interest would also be fully valid, if the tax assessments were timely and properly assessed. Therefore, by concession of unassessed failure-to-pay penalties and interest, there is no possible need to include the portions of the Complaint that need to be stricken.

## II. SPECIFIC OBJECTIONS

1. Paragraphs 6 and 8 describe the DEFENDANTS as "tax defiers". This slanderous term is meant to damage or bias the court against DEFENDANTS, skew DEFENDANTS' image, standing and character before the court. This slanderous term is similar to other

pejorative, vaguely defined, or undefined terms such as anti-revolutionary (as was used in communist countries), anti-royalty (as was used in Iran in the 1960's and 1970's where DEFENDANT Peymon Mottahedeh was born into a Jewish family) and as were used against America's Founding Fathers in the late 1700's. Other such terms are: Nazi, Neo-Nazi, Extremist, Gun-nut, Right wing extremist, White Supremacist, Communist, radical feminist, radical, racist, anti-semite, islamaphobe, hater, homophobe, tax protester, and on and on. (See DEFENDANTS' Declaration, attached.)

Public Law 105-206, the Internal Revenue Service Restructuring and Reform Act of 1998, section 3707, prohibits the IRS from labeling taxpayers as "illegal tax protesters" or any similar designations. Using "illegal tax protester" or similar designations may stigmatize taxpayers and may cause employee bias in future contacts with these taxpayers. "Tax defier" is very similar to the term "illegal tax protester", which Congress found to be slanderous and likely to stigmatize Americans who are so labeled.

This is a tax case. All of the information in this case did not originate from the DOJ. It originated from the IRS records and/or staff. This lawsuit was filed on behalf of the IRS. The paragraphs in

6

the complaint that label Defendants as 'Tax Defiers' or similar terms, are obviously the institutional position of the IRS regarding the DEFENDANTS. It is illegal for the IRS to label the DEFENDANTS as "tax defiers" and therefore the paragraphs labeling the DEFENDANTS as "tax defiers" must be stricken from this Complaint.

Furthermore the "tax defiers" label is not clearly defined. Without knowing what a term means, a proper and correct admission or denial or proof of such a label is not possible. In addition, this characterization of being a "tax defier" is completely immaterial to the alleged timeliness and properness and amount of tax assessments alleged in the Complaint. The Magistrate's refusal to strike Paragraphs 6 and 8 from the Complaint is clearly erroneous and should be reversed.

2. Paragraphs 6 and 11 describe Freedom Law School's teachings as "frivolous tax avoidance schemes".  First, tax avoidance is a completely legal activity. However, by adding the terms "frivolous" and "scheme", the Complaint turns a valid First Amendment activity into a slanderous label similar to the "illegal tax protestor" label, which Congress has outlawed. This characterization is also immaterial to the alleged validity and correctness of the

7

assessments. For the magistrate to refuse to strike this statement from the Complaint is clearly erroneous. If DEFENDANTS owe a validly assessed tax it is immaterial what DEFENDANTS teach or do not teach about any subject. Striking paragraphs 6 AND 11 will streamline this tax assessment-to-judgment case.

3. Paragraphs 13 and 14 speak of DEFENDANT Mr. Mottahedeh's occupation. The alleged claims are immaterial as to whether the tax assessments are valid. Striking Paragraphs 13 and 14 will streamline this case.

4. Paragraphs 14 and 16 further describe Freedom Law School as promoting "various techniques for fraudulently evading the payment of federal income taxes." This slanderous characterization is immaterial to the alleged validity of any assessment. Either the assessments are timely and valid or they are not, regardless of what Freedom Law School may teach about taxes. Furthermore, no time frame is listed for this vague accusation.

For the magistrate to refuse to strike Paragraphs 14 and 16 from the Complaint is clearly erroneous.

5. Paragraph 17 characterizes Peymon's statements on Freedom Law School's website as braggadocio. How does the alleged speech of

8

DEFENDANT Peymon Mottahedeh have anything to do with the validity of tax assessments? They do not. Whether that speech is "bragging" or "stated" or "written" does it make a difference? No, it does not, except that the term "brags" has a negative connotation of Peymon Mottahedeh trying to pump himself up, which is a pejorative, slanderous characterization of any First Amendment protected speech of DEFENDANT Peymon Mottahedeh. This slanderous characterization is immaterial to this lawsuit and shows that Plaintiff is using such language to bias the Court against DEFENDANTS. Therefore the Magistrate's ORDER was clearly erroneous in not striking this paragraph from the Complaint.

6. Paragraph 19 makes a subjective claim about DEFENDANTS' alleged lack of cooperation with an IRS investigation. However, cooperation of IRS employees or DEFENDANTS during an audit process is immaterial to the validity of the alleged tax assessments. Again, the allegation of 'lack of cooperation by Defendants' is clearly geared to bias the Court against Defendants. Therefore Paragraph 19 should be stricken from the Complaint.

7. The portion of Paragraph 20 that states: "following an audit" is immaterial to the alleged tax assessments. There is no requirement in law for the IRS to offer an audit, or for an IRS employee or the

9

audited person to talk or cooperate with each other. By law, IRS must issue a Notice of Deficiency per 26 U.S.C. Sections 6212 and 6313 if the IRS believes that person owes a tax. In addition, through U.S. Tax Court litigation, the parties can litigate whatever tax amounts may be appropriate or have the Court rule what is the appropriate amount of tax. Therefore "following an audit" statement is completely immaterial to the validity of the alleged tax assessments and should be stricken from the Complaint.

WHEREFORE, DEFENDANTS respectfully request that Your Honor overturn the Magistrate's Order of March 17, 2026, and enter a new order striking paragraphs 6, 8, 11, 12, 13, 14, 15, 16, 17, 18, 19, 25, 30, and the phrase "Following the audit" in paragraph 20 from the Complaint as immaterial, impertinent, and scandalous matter.

Respectfully submitted,

March 24, 2026

Peymon Mottahedeh
P.O. Box 10599
Brooksville, Florida 34603
Peymon@FreedomLawSchool.org
(760)964-5519

April Mottahedeh
P.O. Box 10599
Brooksville, Florida 34603
Peymon@FreedomLawSchool.org
(760)964-5519