UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 8:25-cv-01728-JLB-NHA

PEYMON MOTTAHEDEH and

APRIL L. MOTTAHEDEH,

Defendants.

APR 24 2026 PM3:57
FILED - USDC - FLMD - TPA

---

PEYMON MOTTAHEDEH,
Counterclaim Plaintiff,

v.

**UNITED STATES OF AMERICA;**
**JOHN BLACK, in his individual capacity;**
**KIRK PARBONINI, in his individual capacity; and**
**PAUL VON ROBBINSBERG, in his individual capacity,**
Counterclaim Defendants.

---

**DEFENDANT PEYMON MOTTAHEDEH'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Peymon Mottahedeh (hereafter, "Defendant"), proceeding *pro se*, hereby responds to the Plaintiff's Complaint, asserts Affirmative Defenses, and asserts Counterclaims as follows:

## PART I: TIMELINESS AND LACK OF NOTICE

Despite a complete lack of official notice regarding the Magistrate's expedited 7-day deadline (Doc. 25)—which Defendant never received via U.S. Mail, as established by the sworn declaration filed on April 21, 2026—Defendant submits this responsive pleading timely in strict accordance with the Federal Rules of Civil Procedure.

Pursuant to Fed. R. Civ. P. 12(a)(4)(A), when a court denies a motion filed under Rule 12 (such as the prior Motion to Strike), the responsive pleading must be served within fourteen (14) days after notice of the Court's action. The District Judge entered the Order denying the Defendants' Objection to the Magistrate's Order Denying Defendants' Motion to Strike on April 10, 2026. Because Defendant is denied CM/ECF access and must receive notice via U.S. Mail, Fed. R. Civ. P. 6(d) grants an additional three (3) days to this deadline. Therefore, calculating fourteen (14) days plus three (3) days, from the April 10, 2026 Order, establishes a firm statutory deadline of April 27, 2026. Accordingly, this Answer is timely filed.

## PART II: ANSWER TO THE COMPLAINT

## I. GENERAL RESPONSE

Pursuant to Fed. R. Civ. P. 8(b), Defendant denies each and every allegation of the Complaint except those expressly admitted below.

## II. RESPONSES TO NUMBERED PARAGRAPHS

- **Paragraph 1:** Admits that this action purports to seek to reduce alleged federal tax liabilities to judgment, but denies the validity, enforceability, and amount of any such liabilities.
- **Paragraph 2:** Denies for lack of knowledge or information sufficient to form a belief about the truth of these allegations.
- **Paragraph 3:** Admits that the Complaint invokes federal jurisdiction statutes but denies that Plaintiff is entitled to the relief requested.
- **Paragraph 4:** Admits she resides in Hernando County, Florida and that Hernando County is in the Middle District of Florida. Defendant denies having residence in the Tampa Division. Defendant asserts that venue in the Tampa Division is improper and reserves all rights to seek transfer or other appropriate relief.
- **Paragraph 5:** Denies.
- **Paragraph 6:** Admits that Peymon Mottahedeh is the founder of Freedom Law School but denies remaining allegations. Denies the slanderous label of "tax defier" and denies the belittling label of "so-called." Denies that Freedom Law School "teaches frivolous tax avoidance schemes."
- **Paragraph 7:** Admits marital status but denies remaining allegations.

- **Paragraph 8:** Denies.
- **Paragraph 9:** Admits, except that wife April lived in California from June 23, 2001 to December 31, 2001 only, not throughout the 2001 year.
- **Paragraph 10:** Admits, except that Defendants were married on June 24, 2001.
- **Paragraph 11:** Admits to being "heavily involved" in Freedom Law School, which Defendant founded in 1996. Denies that wife April has been heavily involved in Freedom Law School. Denies that Freedom Law School teaches frivolous tax avoidance schemes. Denies the belittling "so-called" label.
- **Paragraph 12:** Admits.
- **Paragraph 13:** Denies that the claim that "no law requires 99% of Americans to file and pay income tax" is false.
- **Paragraph 14:** Denies.

**Paragraph 15:** Admits to collecting fees from Freedom Law School students. Denies receiving "other income".

- **Paragraph 16:** Denied. This assertion compounds one baseless assumption on top of another baseless assumption.
- **Paragraph 17:** Admits, but denies the characterization that Peymon "brags".

- **Paragraph 18:** Admits.
- **Paragraph 19:** Denies.
- **Paragraph 20:** Admits that the Complaint alleges notices of deficiency were issued but denies their validity and legal effect.
- **Paragraph 21:** Admits.
- **Paragraph 22:** Admits that a Tax Court decision and appellate proceedings are alleged but denies that the IRS correctly calculated the Defendants' aggregate income for 2001 through 2006, denies that Defendants' income was properly allocated, denies being liable for penalties, denies any characterization inconsistent with applicable law, and reserves all defenses.
- **Paragraphs 23 through 34:** Denies.

**PART III: AFFIRMATIVE DEFENSES**

Without assuming any burden not otherwise imposed by law, Defendant asserts the following defenses pursuant to Fed. R. Civ. P. 8(c):

- **First Affirmative Defense – Failure to State a Claim:** The Complaint fails to state a claim upon which relief can be granted, including a failure to establish valid and enforceable assessments.

///

- **Second Affirmative Defense – Invalid Assessments:**

  Plaintiff's claims are legally barred because the tax liabilities underlying the Complaint were not "timely and properly" assessed as alleged. To the contrary, the assessments were made in direct violation of mandatory statutory timeframes and express restrictions on assessment. Any assessment made in violation of such statutory timing restrictions is legally defective, void *ab initio*, and cannot support a judgment.

- **Third Affirmative Defense – Violation of RRA 1998 § 3707 (Illegal Designations and Tainted Referral):**

  The Plaintiff's Complaint is irreparably tainted by its reliance on statutorily prohibited designations. Under Section 3707 of the IRS Restructuring and Reform Act of 1998 (RRA 98), IRS officers and employees are strictly forbidden from labeling taxpayers as "illegal tax protesters (or any similar designation)." Pub. L. 105–206, title III, § 3707, July 22, 1998, 112 Stat. 778.

  As explicitly admitted in the Plaintiff's own Complaint, this action was "authorized and requested" by the Chief Counsel of the IRS pursuant to 26 U.S.C. §§ 7401 and 7403. Consequently, the Department of Justice (DOJ) is acting purely as the direct litigation arm of the IRS, prosecuting

a case built entirely upon IRS investigatory files and administrative referrals.

By adopting the term "tax defier"—a mere semantic substitute for the forbidden label—the DOJ is laundering the IRS's statutorily prohibited internal bias into the public court record. The Plaintiff cannot weaponize in litigation what the underlying agency is expressly prohibited by law from doing administratively. The Plaintiff's reliance on administrative files infected by these labels is a flagrant attempt to circumvent a clear Congressional mandate and thereby unfairly prejudice the Court.

- **Fourth Affirmative Defense – First Amendment Retaliation:** This collection action was authorized not for a legitimate administrative tax purpose, but as a retaliatory measure to silence the Defendant's protected speech regarding the administration of federal tax laws.
- **Fifth Affirmative Defense – Lack of Proper Notice and Demand:** Plaintiff has not established that proper statutory notice and demand were made as required by law.
- **Sixth Affirmative Defense – Statute of Limitations:** Plaintiff's claims may be barred in whole or in part by the applicable statutes of limitation.

- **Seventh Affirmative Defense – Penalties Not Properly Assessed:** Any claim for penalties, including "accrued but unassessed" penalties, is barred to the extent such penalties were not properly assessed in accordance with statute.
- **Eighth Affirmative Defense – Reservation of Additional Defenses:**
  Defendant reserves the right to assert additional defenses as they become known through discovery.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant Peymon Mottahedeh respectfully requests that the Court:

A. Deny all relief requested in Plaintiff's Complaint;

B. Dismiss Plaintiff's Complaint with prejudice;

C. Order the IRS to expunge all "tax defier", "tax protester", or similar designations from Defendants' records; and

D. Grant such other and further relief as the Court deems just and equitable.

///

///

## PART IV: COUNTERCLAIMS

Defendant/Counterclaim Plaintiff Peymon Mottahedeh (hereafter "Peymon"), individually, alleges the following Compulsory Counterclaims against the United States of America and the individual Counterclaim Defendants named herein:

### A. JURISDICTION, VENUE, AND COMPULSORY NATURE

**35.** Jurisdiction is proper under 28 U.S.C. § 1331, 26 U.S.C. § 7433, 5 U.S.C. § 702 (Administrative Procedure Act), and the First Amendment to the United States Constitution under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

**36.** Venue is proper in the Middle District of Florida.

**37.** This Counterclaim is compulsory under Fed. R. Civ. P. 13(a) because it arises out of the exact same transaction, occurrence, and administrative record that forms the basis of the Plaintiff's Complaint. The Plaintiff has made the slanderous labels against Peymon (e.g., "tax defier") a necessary element to justify the application of penalties. A judicial determination on these labels will operate as *res judicata*. Therefore, Peymon must bring these claims in the instant action to vindicate his rights or be forever barred from bringing them in future litigation.

### B. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**38.** Since at least 1994, the IRS has engaged in a continuous, thirty-year pattern of animosity, harassment, and retaliation against Peymon. The explicit goal of this institutional posture has been to silence Peymon from exercising his First Amendment rights to free speech, assembly,

association, and peaceably petitioning the government for a redress of grievances regarding the administration of federal tax laws.

**39.** This animus is explicitly documented in the IRS's own files. In early 1994, Counterclaim Defendant Paul Von Ravensberg recorded a note regarding Peymon, stating: *"RECD [received] case from MGR [manager], developed & referred potential fraudulent TX [tax] protester promoter info to CID [Criminal Investigation Division]." Under the "person contacted" column, Von Ravensberg listed "Sue Gary (CID) (714) 643-4064 x 94."* This documentation establishes that Peymon was explicitly targeted for his promotional speech and association.

**40.** In 1998, Congress explicitly recognized the severe prejudice caused by these labels and forbade the IRS from using them. Under Section 3707 of the IRS Restructuring and Reform Act of 1998 (RRA 98), IRS officers and employees are strictly forbidden from labeling taxpayers as "illegal tax protesters (or any similar designation)." Pub. L. 105–206, title III, § 3707, July 22, 1998, 112 Stat. 778.

**41.** Despite this Congressional ban, IRS managers and employees have continually maintained these defamatory labels in Peymon's files, subjecting him to parallel criminal and civil administrative proceedings in an attempt to assess unlawful taxes, close his organization with injunctions, and secure his imprisonment to silence his viewpoints.

**42.** In furtherance of this campaign, the IRS utilized informants at public meetings in North Hollywood to gather information on Peymon's exercise of protected speech.

**43.** In 2006, Counterclaim Defendants Kirk Parbonini and Paul Von Ravensberg attempted to violate the privacy and associational rights of

Peymon by initiating meritless investigations and issuing overbroad, illegal summonses to Southern California hotels to obtain the names of attendees at Peymon's educational rallies.

**44.** In 2007, Counterclaim Defendant John Black created an arbitrary assessment of over $660,000 in payroll taxes based solely on the visual observation of five cars in a driveway, arbitrarily assuming them to be full-time employees for a period of 13 years. While an IRS Appeals Officer eventually zeroed out those specific illegal assessments, the IRS has continued to use the same biased investigatory files.

**45.** In October 2024, the IRS executed a search warrant at Peymon's home and school in Brooksville, Florida, seizing documents in a further retaliatory attempt to disrupt his First Amendment activities.

**46.** The Plaintiff's Complaint in this action—which explicitly admits it was "authorized and requested" by the Chief Counsel of the IRS—is irreparably tainted by its reliance on these statutorily prohibited designations.

**47.** By utilizing semantic substitutes such as "tax defier" (Paragraphs 6, 7), claiming Peymon "teaches frivolous tax avoidance schemes" (Paragraph 16), and alleging he promotes "techniques for fraudulently evading" taxes (Paragraph 14), the Department of Justice (DOJ) is acting purely as the direct litigation arm of the IRS.

**48.** The DOJ is actively laundering the IRS's statutorily prohibited internal bias into the public court record to perform an *ad hominem* character assassination and unfairly prejudice this Court. The Plaintiff cannot weaponize in litigation what the underlying agency is expressly prohibited by law from doing administratively.

**COUNT I: Violation of 26 U.S.C. § 7433 (Civil Damages for Unauthorized Collection)** *(Against Counterclaim Defendant United States of America)*

**49.** Peymon incorporates paragraphs 35 through 48 by reference.

**50.** In connection with the collection of alleged federal taxes, officers and employees of the IRS, acting in their official capacities, have recklessly, intentionally, or negligently disregarded provisions of the Internal Revenue Code and related regulations.

**51.** Specifically, the IRS flagrantly disregarded the statutory prohibitions of RRA 98 § 3707 by utilizing prohibited "tax protester" and "tax defier" designations to drive unauthorized, retaliatory collection actions, audits, and penalty assessments against Peymon.

**52.** Peymon has exhausted all available administrative remedies as required by 26 U.S.C. § 7433(d)(1).

**53.** As a direct and proximate result of these unauthorized collection actions, Peymon has sustained significant direct economic damages over the past 30 years, including the costs of defending against these actions, FOIA expenses, administrative costs, and emotional distress.

**COUNT II: First Amendment Retaliation (*Bivens* Action)** *(Against Individual Counterclaim Defendants Black, Parbonini, and Von Ravensberg)*

**54.** Peymon incorporates paragraphs 35 through 48 by reference.

**55.** The individual Counterclaim Defendants are sued in their individual capacities, as violating the U.S. Constitution and targeting citizens for their speech falls outside the scope of their lawful duties.

**56.** The decisions by the individual Counterclaim Defendants to target Peymon with audits, summonses, aggressive investigations, and fabricated assessments were a direct retaliatory result of Peymon's exercise of protected speech, specifically his criticism of the IRS and the government.

**57.** The individual Counterclaim Defendants utilized their federal authority under color of law to punish Peymon for his political and legal viewpoints, violating his clearly established First Amendment rights and entitling him to damages.

**COUNT III: Violation of RRA 1998 § 3707 and the Administrative Procedure Act (5 U.S.C. § 706)** *(Against Counterclaim Defendant United States of America)*

**58.** Peymon incorporates paragraphs 35 through 48 by reference.

**59.** Section 3707 of RRA 98 strictly prohibits the IRS from designating any taxpayer as an "Illegal Tax Protester" or utilizing any similar derogatory designation.

**60.** The IRS has illegally maintained such labels within Peymon's administrative files since at least 1994. This constitutes an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

**61.** Peymon has suffered a legal wrong and has been adversely affected by this agency action, entitling him to equitable relief compelling the IRS to permanently expunge these illegal designations from all master files and internal records.

///

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaim Plaintiff Peymon Mottahedeh respectfully requests that this Court:

A. Deny the relief requested in Plaintiff's Complaint and dismiss the Complaint with prejudice;

B. Issue an injunction and performance relief under the Administrative Procedure Act ordering the IRS to permanently clean its files and expunge all "tax defier," "tax protester," or similar derogatory, stigmatizing designations from Peymon's administrative and public records;

C. Award Peymon actual, direct economic damages pursuant to 26 U.S.C. § 7433 for the IRS's unauthorized collection actions, including the reimbursement of all legal and administrative defense costs, and treble damages where authorized by law;

D. Award Peymon compensatory and punitive damages against the individual Counterclaim Defendants according to proof at trial for violations of his First Amendment rights; and

E. Grant such other and further relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Counterclaim Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 24th day of April, 2026.

Peymon Mottahedeh
P.O. Box 10599
Brooksville, Florida 34603
Peymon@FreedomLawSchool.org
(760)964-5519

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of April, 2026, I filed the foregoing *Defendant Peymon Mottahedeh's Answer, Affirmative Defense and Counterclaim* with the Clerk of the Court, who will enter the document into the CM/ECF system, which will send a notice of electronic filing to the Plaintiff's counsel:

DANIEL B. CAUSEY, IV

Trial Attorney, Tax Litigation Branch

Civil Division, Department of Justice

Daniel.B.Causey@usdoj.gov

Peymon Mottahedeh

**Peymon Mottahedeh**