UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

v.

Case No. 8:25-cv-01728-JLB-NHA

PEYMON MOTTAHEDEH and
APRIL L. MOTTAHEDEH,
    Defendants.

---

## DEFENDANTS' OBJECTION TO MAGISTRATE'S ORDER DENYING DEFENDANTS' SECOND MOTION FOR PERMISSION TO FILE ELECTRONICALLY (DOC. 35)

Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 3.02, Defendants Peymon Mottahedeh and April L. Mottahedeh, proceeding *pro se*, respectfully object to the Magistrate Judge's April 24, 2026 Endorsed Order (Doc. 35) denying Defendants' Second Motion for Permission to File Electronically.

The Magistrate's Order must be modified or set aside by the District Judge because it is based on a "clearly erroneous" application of the Federal Rules of Civil Procedure and operates to deny Defendants meaningful Due Process, as guaranteed by the Fifth Amendment of the U.S. Constitution.

1

## I. STANDARD OF REVIEW: CLEAR ERROR OF JUDGMENT

Under Fed. R. Civ. P. 72(a), the District Judge must modify or set aside any part of a magistrate judge's order that is "clearly erroneous or is contrary to law." In the Eleventh Circuit, a district court reviews the application of local rules regarding CM/ECF access for an abuse of discretion, which requires a showing that the court made a "clear error of judgment." *McMahon v. Cleveland Clinic Found. Police Dep't*, 455 F. App'x 874, 878 (11th Cir. 2011) (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009)). The Magistrate's Endorsed Order relies on a fundamentally flawed application of the Federal Rules and leverages distinguishable, obsolete precedent. Therefore, it constitutes a clear error of judgment and must be set aside.

## II. TIMELINESS AND THE CLEAR ERROR REGARDING RULES 6(d) AND 5(d)

Pursuant to Fed. R. Civ. P. 72(a), a party may serve and file objections to a magistrate judge's non-dispositive order within 14 days after being served with a copy. The Magistrate Judge's Endorsed Order (Doc. 35) was entered and mailed on April 24, 2026. Because the Court served Defendants via U.S. Mail, Fed. R. Civ. P. 6(d) properly applies to this specific deadline,

2

correctly adding 3 days to account for incoming mail transit time. Furthermore, under Fed. R. Civ. P. 6(a)(1)(C), if a deadline falls on a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a weekend or holiday. Therefore, this Objection is timely filed on or before Monday, May 11, 2026.

This proper application of Rule 6(d) perfectly illustrates the crux of Defendants' Objection: Rule 6(d) exists solely to compensate a *recipient* for incoming mail transit time. It does not—and mathematically cannot—serve as a "grace period" for a party's outgoing physical *filing* with the Court.

The Magistrate justified denying CM/ECF access by claiming the Federal Rules "permit a grace period for filings by mail." The Magistrate's legal conclusion erroneously confuses *service* with *filing*. Under Fed. R. Civ. P. 5(d)(2)(A), a paper not filed electronically is filed only by "delivering it to the clerk." The federal courts strictly enforce this rule, holding that the "mailbox rule" exception applies solely to incarcerated prisoners; for all other litigants, a document is legally "filed" only upon actual, physical delivery to the Clerk. *See Kareem v. FDIC*, 482 F. App'x 594, 595 (D.C. Cir. 2012) ("Appellant is not entitled to the benefits of the 'mailbox rule' because he is not a prisoner. *See Houston v. Lack*, 487 U.S. 266 . . . (1988) (stating that 'prisoners cannot take the steps other litigants can take to

3

ensure that the court clerk receives and stamps their notices . . . '); *see also* Fed.R.Civ.P. 5(d)(2) (a paper is filed by 'delivering it' to the Clerk)."); *see also Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993) (explaining that the mailbox rule exception exists because, unlike other litigants, prisoners are "unable to file personally in the clerk's office" and lack the "safeguards available to other litigants to ensure that their court filings are timely").

Therefore, relying on the U.S. Mail does not provide a "grace period" for filings. Conversely, it mathematically robs Defendants of their allotted time to file papers by delivery to the clerk. Defendants must surrender their documents to the postal service days *prior* to a deadline to ensure timely receipt by the Clerk. Furthermore, the Magistrate's reliance on Rule 6(d) ignores practical realities; because weekends sometimes absorb the 3-day extension, Defendants effectively gain merely one business day, as is the case in this instance, while still being forced to either mail their filings early or take the burdensome "steps" of making a 2- to 4-hour round trip through urban traffic.

4

## III. CLEAR ERROR OF JUDGMENT IN RELYING ON OBSOLETE AND DISTINGUISHABLE PRECEDENT

A deeper review of the precedent cited by the Magistrate reveals a house of cards built upon clear errors of judgment. The Magistrate relies on *Corcho*, which in turn relies on *Gerow v. Blackwell*, 2024 WL 4679030 (M.D. Fla. Nov. 5, 2024), *McMahon* (2011), and *Huminski v. Vermont*, 2014 U.S. Dist. LEXIS 5247 (M.D. Fla. Jan. 15, 2014).

First, the Magistrate's denial relies on a lineage of cases designed to curb abusive, vexatious plaintiffs. In *Huminski*, the unrepresented plaintiff had "more than thirty-five motions pending" and had failed to even serve the defendants. *McMahon* involved a plaintiff filing a convoluted 258-page "shotgun pleading" containing 213 counts. Restricting CM/ECF access to prevent vexatious plaintiffs from spamming the docket is a rational administrative objective.

However, Defendants here are not vexatious plaintiffs; they are citizens actively defending their property and liberty against an expedited lawsuit brought by the Department of Justice. Utilizing punitive rules designed to restrain abusive plaintiffs as a weapon to weaken a defendant's ability to answer the government's charges, and to impose additional financial costs

5

on Defendants, constitutes a clear error of judgment. This establishes an unconstitutional double standard prohibited by the Fifth Amendment.

Second, the Magistrate's shifting justifications reveal a fatal paradox regarding the Court's discontinued "Pro Se Portal." In her previous Order denying Defendants electronic access, the Magistrate cited *Hebdon v. Diabetes* (M.D. Fla. Feb. 23, 2023), explicitly justifying the denial because the Court had provided the "Pro Se Portal" as an electronic alternative.

Yet, the Magistrate's current Order relies on *Corcho*, which in turn propagates the reasoning of *Gerow v. Blackwell*. *Gerow* upheld the denial of CM/ECF specifically because the litigant could use that same Web Portal, yet *Corcho* formally acknowledges the District discontinued that very portal on August 1, 2025. The Magistrate cannot constitutionally rely on the *existence* of an electronic alternative to deny CM/ECF access in one breath, and then leverage precedent based on an alternative that is no longer available to unrepresented litigants into a restrictive paper-filing gauntlet in the next. By operating the portal for years, the Court proved that electronic filing by unrepresented citizens is both technologically feasible and safe.

Finally, the "remedy" provided in *Corcho*—granting "receive-only" electronic notification while leaving the physical filing ban intact—misses the primary problem: the unequal ability of pro se litigants to file papers. Furthermore, the "receive-only" remedy provided in *Corcho* is a procedural trap. Because the 2016 amendments to Fed. R. Civ. P. 6(d) explicitly removed the 3-day extension for documents served electronically, the *Corcho* remedy of electronic service strips unrepresented litigants of the 3-day mail extension when calculating their time to respond. Meanwhile, unrepresented litigants remain fully burdened by the requirement to physically commute to the courthouse or utilize the delayed U.S. Mail to file their own papers with the Court. The *Corcho* compromise mathematically shrinks an unrepresented litigant's response window from both directions.

## IV. FIFTH AMENDMENT EQUAL PROTECTION: THE UNCONSTITUTIONAL CREATION OF A PRIVILEGED LITIGANT CLASS

By enforcing a blanket prohibition against CM/ECF access for unrepresented citizens, the Court has erected a procedural framework that creates two vastly unequal classes of litigants. This arbitrary classification violates the equal protection guarantees inherent in the Fifth Amendment's

Due Process Clause. As the Supreme Court explained when holding the federal government to the same equal protection standards as the states:

> "But the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive. The 'equal protection of the laws' is a more explicit safeguard of prohibited unfairness than 'due process of law,' and, therefore, we do not imply that the two are always interchangeable phrases. But, as this Court has recognized, discrimination may be so unjustifiable as to be violative of due process."

*Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *see also Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975) ("This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment.").

The right of citizens to defend themselves in federal court is a bedrock American right. Since the Judiciary Act of 1789, federal law has guaranteed that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654. Congress explicitly placed self-representation and attorney-representation on equal legal footing.

Yet, the Court's electronic filing policy arbitrarily overrides this constitutional and statutory equality. It elevates licensed attorneys into an "upper class" of privileged litigants while relegating self-represented citizens to a disadvantaged "lower class." As Defendants rightly question: there is no constitutional or logical justification for granting an agent—a legal representative acting on behalf of a third party—vastly superior procedural rights, grace periods, and access to the modern and efficient mechanisms of justice, than a citizen who chooses to defend his own property and liberty without representation.

When a government classification arbitrarily burdens a fundamental constitutional right—such as the right to be heard—it crosses from administrative preference to constitutional violation. *See Boddie v. Connecticut*, 401 U.S. 371, 377 (1971) (holding that due process prohibits structural barriers that deny litigants a "meaningful opportunity to be heard"). The practical reality of the Court's e-filing ban is a staggering structural inequality that destroys Defendants' right to be heard at a "meaningful time." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The privileged class (Plaintiff's counsel) operates without physical friction. From their office or the comfort and safety of a home office, or even from a local coffee shop or a beach anywhere in the world, an attorney

9

may draft a document and file it with a single keystroke at 11:59 P.M. Eastern time on the final day of a deadline. Moreover, because attorneys consent to electronic service via CM/ECF registration, they receive all filings and orders instantaneously.

Conversely, the unrepresented class is subjected to immense physical, financial, and logistical friction. To meet a 4:00 P.M. Clerk's Office deadline, Defendants are arbitrarily stripped of eight hours of drafting time on the day of the deadline.

To physically deliver a document to the clerk, Defendants must abandon their livelihood and undertake a grueling 2- to 4-hour (depending on traffic) round-trip commute to the Tampa courthouse. This archaic system imposes heavy financial and logistical burdens exclusively on the unrepresented class: Defendants must pay for vehicle fuel, maintenance, and depreciation, or hire an exorbitant taxi to travel between Brooksville and Tampa; take valuable time away from their work and life; and pay for downtown parking.

Most egregiously, it requires citizens to navigate the daily physical hazards of unpredictable urban traffic and high-speed highways simply to hand a piece of paper to a clerk—an act the privileged class accomplishes

digitally in a few seconds. None of these physical or financial costs are borne by represented parties, who can file their papers electronically from the convenience of any computer, from any location.

This arbitrary disparity is not a hypothetical grievance. This structural imbalance was aggressively weaponized against Defendants regarding the Magistrate's March 17, 2026 Order (Doc. 25). In that instance, the Magistrate orchestrated a scenario that skirted the edge of an involuntary, dispositive default:

- The Magistrate arbitrarily shortened the time for Defendants to Answer from the standard 14 days down to just 7 days;

- The Magistrate ordered the 7-day clock to begin upon the date of *"entry"* rather than *"service,"* purposefully bypassing the 3-day mail extension of Rule 6(d);

- The physical mailing of the Order by the Court (Doc. 25) was either never initiated or was completely lost in the U.S. Mail, as Defendants have *never* received a mailed copy of the March 17 Order to this day (see Declarations, Doc. 27); and

- This combination created a silent default trap that skirted a highly prejudicial, dispositive situation, threatening to rob Defendants of their right to defend this action.

Disaster was only averted because Defendant Peymon Mottahedeh diligently expended his own personal funds and time to search the PACER docket daily. Discovering the Order the following day (March 18, 2026), Defendants were left with a mere 6 days to conduct legal research, draft a hastily prepared answer and counterclaim, abandon their work and personal obligations, and endure the perilous physical commute to Tampa to file their response by March 24, 2026, due to the highly expedited deadline imposed by the Magistrate.

When court deadlines physically expire in the postal system before citizens can even receive them—while attorneys enjoy the luxury of instantaneous digital litigation—the denial of electronic access constitutes a substantive Fifth Amendment Equal Protection and Due Process violation.

**CONCLUSION AND RELIEF REQUESTED**

The Magistrate Judge's Endorsed Order (Doc. 35) relies on a clearly erroneous interpretation of the Federal Rules of Civil Procedure and

12

improperly propagates the flawed legal reasoning of an unreported, non-binding, and inapplicable magistrate order (*Corcho*).

There is no rational or constitutional basis to maintain a two-class system of justice. Forcing unrepresented citizens to assume the financial costs, highway risks, and massive time expenditures of a 2- to 4-hour round-trip commute to beat a 4:00 P.M. physical delivery deadline—while granting attorneys instantaneous notification and 11:59 P.M. remote electronic filing privileges from anywhere in the world—creates an unconstitutional dual system of justice and is an arbitrary deprivation of Due Process. It structurally punishes citizens for exercising their statutory right under 28 U.S.C. § 1654 to conduct their own cases.

WHEREFORE, Defendants respectfully request that the District Judge:

1. Find that the Magistrate made a clear error of judgment and ruled contrary to law by interpreting Fed. R. Civ. P. 6(d) as a "grace period for filing" and by relying on obsolete precedent;

2. Explicitly decline to follow the erroneous legal reasoning regarding Rule 6(d) established by the magistrate judge in *Corcho v. Bank of Am., N.A.*, No. 6:25-CV-1082-JSS-DCI (M.D. Fla. Jan. 5, 2026);

13

3. Set aside the Magistrate's April 24, 2026 Endorsed Order (Doc. 35) in this case; and

4. Grant Defendants full CM/ECF filing and notification privileges for the duration of this action to cure the structural inequality that exists between the filing procedures forced upon pro se individuals and the modern privileges granted to represented parties, thereby restoring Defendants' right to meaningful access to the courts.

Respectfully submitted this 11th day of May, 2026.

Peymon Mottahedeh
*Pro Se Defendant*
P.O. Box 10599
Brooksville, Florida 34603
Peymon@FreedomLawSchool.org
(760)964-5519

April Mottahedeh
*Pro Se Co-defendant*
P.O. Box 10599
Brooksville, Florida 34603
Peymon@FreedomLawSchool.org
(760)964-5519

14

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of May, 2026, the original of the foregoing document was physically delivered to the Clerk of the Court for filing. I further certify that pursuant to Fed. R. Civ. P. 5(b)(2)(E) and the Middle District of Florida CM/ECF Administrative Procedures, upon the Clerk's docketing of this physical paper, the Court's CM/ECF system will automatically generate a Notice of Electronic Filing (NEF). Because Plaintiff's counsel is a registered CM/ECF user, this NEF constitutes valid and instantaneous electronic service upon Plaintiff at the following address:

Daniel B. Causey
Trial Attorney, Tax Division
U.S. Department of Justice
Email: Daniel.B.Causey@usdoj.gov

Peymon Mottahedeh

15