JUL 2 2026 P/5 [illegible]
FILED – USDC – FLMD – [illegible]

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Case No. 8:25-cv-01728-JLB-NHA

PEYMON MOTTAHEDEH and

APRIL L. MOTTAHEDEH,

Defendants.

## DEFENDANT PEYMON MOTTAHEDEH'S OBJECTION TO THE MAGISTRATE JUDGE'S JUNE 18, 2026 ORDER DENYING LEAVE TO AMEND

Defendant Peymon Mottahedeh, proceeding *pro se*, hereby files his formal Objection to Magistrate Judge Natalie Hirt Adams' June 18, 2026 Order (Doc. 51) denying his Motion for Leave to File a Second Amended Answer, Affirmative Defenses, and Counterclaims (Doc. 49). This Objection is timely submitted pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(a), and Local Rule 6.02.

For the reasons set forth below, the Magistrate Judge's Order is clearly erroneous and contrary to law. The District Judge should sustain this Objection, vacate the Endorsed Order, and grant Defendant leave to

file his Second Amended Answer, Affirmative Defenses, and Counterclaims.

## PRELIMINARY STATEMENT AND STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), a District Judge must reconsider a Magistrate Judge's non-dispositive order where it has been shown to be "clearly erroneous or contrary to law." A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Holton v. City of Thomasville School Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005). An order is contrary to law when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Malibu Media, LLC v. Doe*, 923 F. Supp. 2d 1339 (M.D. Fla. 2013).

The June 18, 2026 Order meets both standards. It rests on an indisputable factual error regarding the text of the proposed amendment, completely inverts the burden of proof governing Rule 15(a)(2) motions, and cuts off the regular adversarial briefing process, resulting in severe procedural error.

## LEGAL ARGUMENT

## I. The Order Applies the Wrong Legal Standard and Rests on a Monolithic, Surface-Level Characterization of the Proposed Pleading

The Order quotes the text of Federal Rule of Civil Procedure 15(a)(2)—noting that the Court "should freely give leave when justice so requires"—but immediately misapplies it based on an incorrect factual premise. The Order asserts that the proposed Second Amended Answer (Doc. 50) "appears to present no additional affirmative defenses or counterclaims, but only re-orders the affirmative defenses". While the basic titles of the defenses overlap with the previous filing, the Magistrate Judge completely ignored massive, substantive expansions of factual allegations and critical party amendments that fundamentally alter the legal scope of the litigation.

A precise comparison between the First Amended Answer (Doc. 43) and the proposed Second Amended Answer (Doc. 50) reveals that Doc. 50 introduces extensive, highly critical substantive updates:

- **Substantive Amendment of Counterclaim Defendants:** In the First Amended Answer (Doc. 43), Defendant included a generic

placeholder for "JOHN and JANE DOES Nos. 1-100". In the proposed Second Amended Answer (Doc. 50), Defendant strategically eliminated those generic placeholders and substituted a targeted class of defendants: **"Unknown IRS Top Managers employees from 1994 through 2025, in their individual capacities"**. This is a vital procedural alteration necessary to properly scope a *Bivens* retaliation claim against the specific, unnamed agency heads who authorized the adverse policies. The Order's claim that there are "no additional counterclaims" completely misses this modification of the parties.

- **Substantive Enlargement of the Third Affirmative Defense:** While Doc. 43 raised unclean hands and viewpoint discrimination, Doc. 50 dramatically expands the legal framework under Section 3707(a) of the IRS Restructuring and Reform Act of 1998 (RRA 98). It introduces explicit allegations detailing exactly how the Department of Justice Civil Division acts as the direct litigation arm of the IRS to "launder" prohibited internal agency bias directly into the public court record.

- **Massive Factual Expansion of the Retaliation Defense (Moved to the Eighth Defense):** In Doc. 43, the First Amendment Retaliation defense consisted of a brief, generalized two-paragraph statement. In Doc. 50, this defense is completely transformed into a robust, multi-page evidentiary framework. It explicitly incorporates twenty-five detailed factual sub-paragraphs outlining Defendant's personal history, his background coming to America from Iran, the specific timeline of his legal research, and the precise nature of his protected speech and parodies.

By looking only at the titles of the defenses and concluding that Defendant "only re-orders" his answer, the Magistrate Judge failed to review the actual substance of the text. It is a clear error of law to deny leave to amend on the ground that a pleading is identical when it adds specific defendants and introduces thousands of words of new, critical factual infrastructure.

## II. The Order Contrary to Law Inverts the Burden of Proof Under Rule 15(a)(2)

The Order states that Defendant "presents no reason why justice requires that he be permitted to amend a second time," and concludes that "[b]ecause the motion does not explain why amendment should be

permitted, the motion is denied". This rationale turns long-standing federal jurisprudence on its head.

Under the seminal Supreme Court precedent of *Foman v. Davis*, 371 U.S. 178, 182 (1962), leave to amend must be "freely given" in the absence of an affirmative justification for denial, such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, or undue prejudice to the opposing party.

Crucially, the Eleventh Circuit has established that the burden rests entirely on the party opposing the amendment to demonstrate that one of these justifying reasons exists. The moving party does not carry an initial burden to prove their own worthiness. *See Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993); "While the district court is accorded discretion in arriving at its decision, a justifying reason must be apparent for denial of a motion to  amend." *Nolin v. Douglas County*, 903 F.2d 1546, 1550 (11th Cir. 1990). By requiring the *pro se* Defendant to affirmatively justify why "justice requires" the amendment, rather than requiring the Government to prove a cognizable ground for denial (such as prejudice), the Magistrate Judge inverted the legal burden. This misapplication of the *Foman* standard is fundamentally contrary to law.

### III. Denying the Motion *Sua Sponte* Three Days After Filing Without Allowing the Government to Respond Violates Procedural Rules and Raises an Appearance of Bias

The procedural timeline of this dispute reveals an extraordinary departure from standard practice:

- **June 15, 2026:** Defendant files his Motion for Leave to Amend (Doc. 49).

- **June 18, 2026:** Only three days later, the Magistrate Judge issues the Order denying the motion (Doc. 51).

Under Middle District of Florida Local Rule 3.01(d), an opposing party has fourteen (14) days to file a response to a motion. By striking down the motion just 72 hours after its filing, the Magistrate Judge completely bypassed the adversarial framework. The Order highlights that "Mr. Mottahedeh states that Plaintiff does not consent to the amendment" as a point against him. Yet, it is internally contradictory to use a lack of consent as a basis for denial while simultaneously denying the non-consenting party the responsibility to articulate *why* the non-consenting party objects or *how* the non-consenting party would be

prejudiced by allowing leave to amend.

Furthermore, this rapid *sua sponte* denial fits an ongoing, concerning pattern in these proceedings where orders adverse to the *pro se* Defendant are issued before the Government is ever required to subject its positions to written scrutiny. By acting as an advocate for the Government's unstated objections, the Court creates a powerful appearance of partiality that erodes confidence in the neutrality of these civil proceedings.

## IV. The Eleventh Circuit Command of "Extreme Liberality" Dictates That Leave Should Be Granted for a First Request Under a Scheduling Order

The Order frames this request as an attempt "to amend a second time". Legally, this is incorrect. While the proposed document is titled a "Second Amended Answer," this is Defendant's **first** time requesting leave from the Court. The first amendment, filed on May 15, 2026, was submitted entirely as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(A) requiring zero judicial intervention. The Eleventh Circuit enforces a policy of "extreme liberality" toward a party's first request for leave to amend a pleading. *Moore*, 989 F.2d at 1131. This liberality is amplified here by several undeniable facts:

1. **Timeliness:** The motion was filed on June 15, 2026, which was perfectly timely under the Court's Case Management and Scheduling Order (Doc. 46).

2. **No Prejudice:** Discovery does not close until December 4, 2026, and trial is set for June 2027. The Government cannot show a shred of cognizable prejudice by an amendment allowed at the absolute genesis of the scheduling order.

3. **No Bad Faith:** There is zero evidence of an improper dilatory motive or bad faith.

Denying a timely, first-requested motion for leave under a freshly issued scheduling order directly contradicts the Eleventh Circuit's mandate to favor the resolution of cases on their substantive merits.

## V. The Court Failed to Hold the *Pro Se* Defendant's Pleadings to Less Stringent Standards

It is foundational jurisprudence that the filings of *pro se* litigants must be held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Eleventh Circuit consistently demands that *pro se* pleadings be liberally construed and that such litigants be afforded reasonable opportunities to amend their claims on the merits rather than having them dismissed

or stricken on technical, hyper-formalistic interpretations. "*Pro se* pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally." *See, e.g., Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008); *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014).

Instead of affording Defendant the required latitude, the Magistrate Judge utilized a summary Order to mischaracterize and strike down a major pleading. Had the Court applied the necessary liberal construction, it would have easily recognized the newly introduced constitutional affirmative defenses and counterclaims.

## CONCLUSION AND RELIEF SOUGHT

The June 18, 2026 Order (Doc. 51) is factually incorrect, relies on an inverted burden of proof, and violates the basic tenets of due process and liberal construction afforded to *pro se* defendants.

**WHEREFORE**, Defendant Peymon Mottahedeh respectfully requests that the District Judge:

1. **SUSTAIN** this Objection;

2. **REVERSE** and **VACATE** the Magistrate Judge's June 18, 2026 Endorsed Order (Doc. 51); and

3. **GRANT** Defendant leave to file his Second Amended Answer,

Affirmative Defenses, and Counterclaims (Doc. 50), and direct the

Clerk to restore Doc. 50 to the active docket.

Respectfully submitted this 23rd day of June, 2026.

Peymon Mottahedeh
P.O. Box 10599
Brooksville, Florida 34603
Peymon@FreedomLawSchool.org
(760)964-5519