UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION



UNITED STATES OF AMERICA,

    Plaintiff/Counter-Defendant,

v.                                             Case No. 8:25-cv-01728-JLB-NHA

PEYMON MOTTAHEDEH and
APRIL L. MOTTAHEDEH,

    Defendants,

_____

PEYMON MOTTAHEDEH,

    Counterclaim Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

    Counterclaim Defendants.

_____

### DEFENDANT/COUNTERCLAIM PLAINTIFF PEYMON MOTTAHEDEH'S RESPONSE IN OPPOSITION TO UNITED STATES' MOTION TO DISMISS COUNTERCLAIMS

Defendant and Counterclaim Plaintiff, Peymon Mottahedeh

("Counterclaimant"), proceeding *pro se*, hereby files this Response in

1

Opposition to the United States' Motion to Dismiss Counterclaims (Dkt. 52).

## I. INTRODUCTION

The United States' Motion to Dismiss ("MTD") mischaracterizes the Counterclaims and attempts to resolve disputed issues of material fact at the pleading stage. Counterclaimant does not bring these counterclaims to restrain the lawful assessment or collection of federal taxes. Rather, Counterclaimant seeks two distinct, legally authorized remedies:

1. **Count I:** Individual accountability under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), against IRS agents who acted *ultra vires* in their individual capacities by engaging in First Amendment retaliation.

2. **Count II:** Non-monetary, injunctive relief against the United States pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 702, to enforce the explicit statutory prohibition enacted by Congress in Section 3707 of the IRS Restructuring and Reform Act of 1998 (RRA 1998), which categorically bans the IRS from labeling citizens as "illegal tax protesters" or similar designations.

///

2

Because Counterclaimant has adequately pleaded facts that state a plausible claim for relief, the MTD must be denied.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a pleading need only contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court **must accept all well-pleaded factual allegations as true** and construe them in the light most favorable to the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court cannot resolve factual disputes or entertain affirmative defenses that require evidentiary support at the Rule 12 stage. Furthermore, *pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## III. ARGUMENT

### A. COUNT I STATES A PLAUSIBLE *BIVENS* CLAIM FOR FIRST AMENDMENT RETALIATION AGAINST THE INDIVIDUAL DEFENDANTS (Rule 12(b)(6))

The Government argues Count I must be dismissed because: (1) it should be "construed" as an official-capacity claim against the United States requiring exhaustion; (2) Counterclaimant allegedly engaged in unprotected "commercial speech"; (3) Counterclaimant suffered no

concrete actions; and (4) *Bivens* remedies should not be extended. Each argument fails.

### 1. Count I Cannot Be Converted to an FTCA Claim to Force Exhaustion.

The Government attempts to convert Count I into an official-capacity suit against the United States under 26 U.S.C. § 7433 to invoke administrative exhaustion requirements. This misstates the law. Count I is a constitutional claim against individual agents. Under 28 U.S.C. § 2679(b)(2)(A), the Federal Tort Claims Act's (FTCA) exclusivity and substitution rules explicitly do not apply to an action "brought for a violation of the Constitution of the United States." While this provision does not automatically create a *Bivens* remedy, it legally preserves the constitutional nature of the claim from being subsumed into the FTCA. Because Counterclaimant pleads a distinct First Amendment constitutional violation against individual actors, rather than a dispute over standard collection procedures, the Government cannot simply substitute itself to force dismissal under § 7433's exhaustion requirements.

### 2. The Individual Defendants Acted Outside the Lawful Scope of Employment and Personally Participated in the Retaliation.

Government employees are protected by official immunity only when performing duties within the legitimate scope of their employment. In

Section 3707 of RRA 1998, Congress issued a mandatory, non-discretionary prohibition: IRS employees "shall not designate taxpayers as illegal tax protesters (or any similar designation)."

As pleaded, the individual IRS agents—including Agents Tambornini and Black, and Appeals Officer Peck—personally participated in utilizing these statutorily prohibited designations to retaliate against Counterclaimant's political views. By intentionally weaponizing a designation that Congress explicitly banned, these specific defendants engaged in unconstitutional conduct outside the functional scope of their employment. This personal participation in ongoing, retaliatory enforcement—which presently affects Counterclaimant's administrative standing—cannot be shielded by official-capacity immunity at the pleading stage.

### 3. The Government Improperly Attempts to Litigate Disputed Facts Regarding Protected Speech

The Government claims Counterclaimant's speech was unprotected "commercial speech" or "fraud," citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274 (1977). This is a factual dispute inappropriate for a Rule 12(b)(6) motion. While Counterclaimant operates a business, the Counterclaim distinctly pleads that the core of his activities—petitioning Congress, exposing agency overreach, and distributing literature critical of

the Federal Reserve—constitutes non-commercial political advocacy. Even if the Government alleges these materials contained commercial elements, the Supreme Court has long held that speech on public issues does not lose its First Amendment protection simply because it is sold or promoted economically. *See, e.g., Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781 (1988).

Furthermore, the Government's attempt to dismiss this advocacy as unprotected "fraud" is directly contradicted by the IRS's own records. Internal IRS Criminal Investigation Division (CID) files from 1994 (Control No. 8933) confirm that the agency explicitly targeted Counterclaimant as a "fraudulent TX [tax] protester promoter" based directly on his distribution of political literature—including flyers debunking tax myths and advertisements for a book challenging the Federal Reserve System. Distributing literature critical of the government is core, protected political speech. Moreover, after a 13-year investigation into whether Counterclaimant was an "abusive tax shelter promoter," IRS Revenue Agent Roma Patel issued an official letter on July 11, 2016, formally discontinuing the investigation without any penalty or injunction. The Government cannot use a Motion to Dismiss to claim Counterclaimant's

speech is unprotected "fraud" when the IRS's own investigations have repeatedly failed to substantiate such a claim.

### 4. Counterclaimant Pleads Highly Specific, Concrete Retaliatory Actions.

The Government falsely asserts on page 15 of its MTD that Counterclaimant "does not point to specific conduct or concrete actions against him." This willfully ignores the extensively pleaded and documented history of retaliatory enforcement. Driven by the statutorily prohibited labels, individual agents took severe, concrete retaliatory actions against Counterclaimant.

In 2006, Agent Kirk Tambornini issued a retaliatory CID summons to the Atrium Hotel demanding the names and records of Counterclaimant's seminar attendees—a blatant attack on First Amendment associational rights that the IRS was forced to formally withdraw on September 12, 2006, after Counterclaimant filed a federal lawsuit (C.D. Cal. Case No. CV-06-02356-SJO). Similarly, in 2009, Agent John Black bypassed standard procedures to slap Counterclaimant with $663,000 in fabricated payroll tax liens based solely on counting six cars parked outside Counterclaimant's home. On November 28, 2011, the IRS Appeals Office issued a *Supplemental Notice of Determination* withdrawing the liens entirely, explicitly conceding the agents' actions were "premature," based on

7

"unsupported assumptions," and lacked evidentiary documentation. Accepting these well-pleaded, historically documented facts as true, Counterclaimant has easily satisfied all elements of First Amendment retaliation to defeat a Rule 12(b)(6) motion.

### 5. No Adequate Alternative Remedial Scheme Exists Because the Unconstitutional Conduct Corrupted the Alternatives.

Count I must be analyzed under recent Supreme Court cases restricting implied damages remedies, specifically *Egbert v. Boule*, 596 U.S. 482 (2022). The Government relies on *Egbert* to argue against a *Bivens* remedy, claiming Congress has provided alternative remedies (such as 26 U.S.C. § 7433 or Tax Court review) that counsel hesitation. However, this ignores the structural reality of this case.

This statutorily prohibited stigmatization creates a severe, concrete difference in the administration of justice. As pleaded, when the IRS, through the DOJ, utilizes these illegal labels, it signals to the courts and administrative bodies that the targeted citizen is:

1. A horrible person, a bad guy, and a lawbreaker;

2. Someone who does not want to pay his fair share of taxes;

3. Someone causing the rest of the citizens to work harder and bear a heavier tax burden;

4. Someone who must be summarily and harshly punished by the court;

5. A dangerous example that others might follow if not crushed;

6. A threat to the funding and stability of the Government and civilization; meaning

7. Standard due process must be bent by the court to protect the Government.

Weaponizing these stigmatizing labels is precisely the type of unconstitutional prejudice Congress banned when it enacted Section 3707 of RRA 1998. Furthermore, the alternative remedies cited by the Government deal exclusively with the *financial collection of taxes*. Congress has provided absolutely no administrative or statutory remedy for a citizen to seek damages when an individual IRS agent violates the First Amendment by injecting statutorily banned political labels into a master file to prejudice proceedings.

In fact, Counterclaimant pleads that the agents weaponized the prohibited designations to deliberately *corrupt* the very alternatives the Government points to. For example, Appeals Officer Peck relied on the prohibited "tax protester" designation to explicitly deny Counterclaimant his statutory Collection Due Process rights. An administrative remedy

cannot be an "adequate alternative" under *Egbert* when the agents' unconstitutional conduct actively corrupts the remedy itself. Therefore, a *Bivens* damages remedy remains the only adequate avenue for relief, and Count I must proceed to discovery.

## B. COUNT II STATES A VALID CLAIM UNDER THE APA AND RRA 1998 § 3707 (Rule 12(b)(1) & 12(b)(6))

The Government asserts Count II must be dismissed under Rule 12(b)(1) for lack of sovereign immunity waiver and failure to identify a "final agency action." Both arguments are incorrect.

### 1. Sovereign Immunity is Expressly Waived Under 5 U.S.C. § 702.

The Government claims RRA 1998 contains no waiver of sovereign immunity, deliberately ignoring the Administrative Procedure Act. Section 702 of Title 5 explicitly waives the sovereign immunity of the United States for actions *"seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity."*

Count II seeks purely non-monetary, equitable relief—an order compelling the IRS to comply with Section 3707 of RRA 1998 by expunging prohibited "tax defier" designations from Counterclaimant's files. Sovereign immunity is unequivocally waived for this claim under the APA.

10

## 2. The Designation Constitutes "Final Agency Action" Under *Bennett v. Spear*.

Maintaining "tax defier" labels constitutes reviewable "final agency action." Under *Bennett v. Spear*, 520 U.S. 154 (1997), agency action is final where it marks the consummation of decision-making and determines rights from which legal consequences flow. Both conditions are met here.

First, the ongoing maintenance of the blacklisted label within Counterclaimant's IRS Individual Master File (IMF) represents the consummation of the agency's categorization process. Second, severe and concrete legal consequences flow directly from this label. Historically, it caused IRS Appeals Officer Teresa Peck to summarily deny Counterclaimant his statutory Collection Due Process (CDP) hearing rights based on the designation. Presently, the continued maintenance of this prohibited label restricts Counterclaimant's legal rights and forms the prejudiced foundation of the Government's current enforcement action. Counterclaimant seeks a precise equitable remedy: an order directing the IRS to physically expunge the prohibited designations from his IMF and related enforcement databases. The ongoing maintenance of a statutorily banned label that actively infects administrative due process constitutes arbitrary and capricious "final agency action" under 5 U.S.C. § 706(2)(A).

///

11

### 3. The Anti-Injunction Act Does Not Bar Count II.

The Anti-Injunction Act, 26 U.S.C. § 7421(a), bars suits seeking to "restrain the assessment or collection of any tax." Count II does not seek to enjoin the collection of any tax, nor does it challenge the validity or amount of an assessment. It solely seeks equitable expungement of defamatory, statutorily banned political labels from Counterclaimant's Master File. Expunging the specific, prohibited words "tax defier" or "illegal tax protester" does not invalidate any tax, nor does it prevent the IRS from assessing or collecting taxes using neutral, lawful procedures. It merely requires the agency to execute its collections without relying on a statutorily banned political designation, leaving tax administration completely intact. Therefore, the Anti-Injunction Act does not bar Count II.

## IV. CONCLUSION

The Government's MTD asks this Court to resolve disputed factual intent, categorize speech without evidence, and ignore explicit Congressional mandates. These are evidentiary matters reserved for summary judgment or trial. Counterclaimant has pleaded highly specific, documented facts demonstrating First Amendment retaliation by individual agents acting *ultra vires*, and arbitrary agency action under the

APA. Retaining these counterclaims and allowing discovery is essential to developing the evidentiary record.

**WHEREFORE,** Counterclaimant respectfully requests that this Honorable Court DENY the Plaintiff's Motion to Dismiss (Dkt. 52) in its entirety, order the Counterclaim Defendants to file an Answer, and allow the parties to proceed to discovery.

Respectfully submitted this 6th day of August, 2026.

Peymon Mottahedeh, Pro Se
P.O. Box 10599
Brooksville, Florida 34603
Peymon@FreedomLawSchool.org
(760) 964-5519

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of August, 2026, a true and correct copy of the foregoing Response in Opposition to United States' Motion to Dismiss Counterclaims was filed physically with the Clerk of the Court for the Middle District of Florida.

I further certify that on this same date, a true and correct copy of this document was served via First-Class U.S. Mail, postage prepaid, upon counsel for the Plaintiff at the following address:

> **Daniel B. Causey, IV**
> Trial Attorney, Tax Litigation Branch
> Civil Division, U.S. Department of Justice
> P.O. Box 14198 Washington, D.C. 20044
> *Attorney for the United States*

**Peymon Mottahedeh**

14